## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **MONTGOMERY SMITH, II,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **2:12-cv-2275-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM OPINION

Plaintiff Montgomery Smith, II ("Smith") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

Smith filed an application for Title II disability insurance benefits and Title XVI Supplemental Security Income on April 1, 2009, alleging a disability onset date of February 20, 2009, due to a herniated disc. (R. 19, 181). After the SSA denied Smith's claim, he requested a hearing before an ALJ. (R. 108-09). The ALJ subsequently denied

Smith's claim, (R. 16-36), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6). Smith then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges

2

that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

(4)  whether the claimant is unable to perform his or her past work; and

(5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to

a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself.* Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the*

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> *pain itself. See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id.*

### IV. The ALJ's Decision

In performing the five step analysis, the ALJ found that Smith had not engaged in substantial gainful activity since March 16, 2009, and, therefore, met Step One. (R. 34). Next, the ALJ found that Smith satisfied Step Two because he suffered from the severe

5

impairments of "hypertension, obesity, umbilical herniorrhaphy with segmental bowel restriction and primary anastomosis, and herniated disc." *Id.* The ALJ then proceeded to the next step and found that Smith failed to satisfy Step Three because his "impairments, when considered individually or in combination, do not meet or equal any [listed impairment]." *Id.* Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Smith "retains the residual functional capacity to perform sedentary work which allows occasional bending, stooping; no climbing; no driving; no pushing or pulling of the upper extremities and a sit/stand option." (R. 35). In light of his RFC, the ALJ held that Smith's "impairments prevent him from performing any of his past relevant work."[2] *Id.* Lastly, in Step Five, the ALJ considered Smith's age, education, work experience, and RFC and determined "there are a significant number of jobs in the national economy that [Smith] could perform." (R. 35-36). Therefore, the ALJ found that Smith "has not been disabled at any time through the date of this decision." (R. 36).

**V. Analysis**

The court now turns to Smith's contentions that the ALJ erred by (1) relying on the RFC assessment of the State agency medical consultant; (2) rejecting the opinions of

---

[2] As of the date of the ALJ's decision, Smith was 40 years old, Doc. 9 at 4, and had past relevant work as an electrician's helper, sprinkler installer, foundry worker, shearing machine operator, press brake operator, and punch press operator, which ranged from medium to heavy, and unskilled to skilled. (R. 35).

Smith's consultative examiner; and (3) rejecting Smith's allegations of disabling pain. *See* doc. 9 at 7-12. The court addresses each contention in turn.

     A.    <u>The ALJ did not err by relying on the State agency medical consultant.</u>

The foundation of Smith's argument is his contention that the ALJ must base his RFC assessment on a medical source opinion (MSO) or RFC assessment from a medical source:

> There is no express requirement for an MSO or RFC assessment to be of record in order for the ALJ to make RFC findings; however the ALJ is required to review and accord weight to medical opinion, and as a practical matter, to avoid substituting his or her judgment for that of a physician, an MSO of some kind is crucial to the analysis of functioning based on the medically determinable impairments (MDI) determined.

Doc. 9 at 8. Therefore, because the only RFC assessment from a medical source in the record was from Dr. H. Gordon Mitchell, the State agency medical consultant, Smith argues "the ALJ impliedly accorded great weight to the opinion of a non examining reviewing physician rendered prior to significant subsequent impairments." *Id.* at 7-8. However, Smith overlooks that the regulations and the law of this circuit do not require an RFC from a medical source. Rather, the pertinent regulation provides that opinions on issues reserved to the Commissioner, such as a claimant's RFC, are not medical opinions:

> Opinions on some issues, such as the examples that follow, are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.

20 C.F.R. §§ 404.1527(d), 416.927(d). One of the specifically reserved examples is a claimant's RFC:

7

> Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Consequently, the Eleventh Circuit has recognized that "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (unpublished).  It has also found an ALJ's RFC finding can be supported by substantial evidence even if no medical source statement is in the record.  *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 922-23 (11th Cir. 2007) (unpublished) (rejected the claimant's argument "that without [the physician's] opinion, there [was] nothing in the record" to support the ALJ's RFC assessment).  Therefore, the ALJ was not required to rely on an MSO in assessing Smith's RFC, and Smith's contention that the ALJ "impliedly accorded great weight" to the State agency medical consultant's RFC is unavailing, especially when, as here, the ALJ made clear that he assessed Smith's RFC "[a]fter having carefully considered *the entire documentary evidence* as well as the testimony of Mr. Smith."  (R. 33) (emphasis added).  Indeed, the ALJ's RFC assessment differs from Dr. Mitchell's RFC assessment in important ways.  For example, while Dr. Mitchell found Smith could sit for six hours in an eight-hour workday, and could occasionally climb ramps and stairs, (R. 87-88), the ALJ provided for a sit/stand option and allowed no climbing.  (R. 35).  These differences belie Smith's contention regarding the ALJ's purported over reliance on Dr. Mitchell's RFC.

Finally, the court notes that an ALJ must consider the findings of a State agency medical consultant, who is considered an expert, and must explain the weight given to such findings in the same way as with other medical sources. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Here, the ALJ explained that he gave Dr. Mitchell's opinion "significant weight" because of "attendant records." (R. 33). This evidence included the consultative examination by Dr. William Lievens, who found "[n]o paravertebral muscle spasms" and only "mild muscle tenderness in the low back." (R. 261). This record shows that the ALJ considered other evidence in the record in assessing Smith's RFC, and that the ALJ did not give excessive weight to the RFC form completed by Dr. Mitchell.

  B. <u>The ALJ did not err in rejecting the opinions of Smith's consultative examiner.</u>

Smith next contends that the ALJ erred in rejecting the opinions of Dr. G. Bryan Dewees, III, who examined Smith at the request of his attorney. The ALJ cited Smith's inaccurate statements to Dr. Dewees as one of the reasons why he rejected Dr. Dewees's opinions: "Also, it appears that Dr. Dewees uncritically accepted as true, the statements and subjective assertions of Mr. Smith, which upon careful examination of the evidentiary record appear inaccurate." (R. 32-33). Smith asserts that the ALJ's rejection of Dr. Dewees's opinions was "disingenuous" and the result of "hair splitting" because the ALJ cited Smith's inaccurate report to Dr. Dewees that "he has herniated discs but in fact he has only one herniated disc." Doc. 9 at 10. Unfortunately, Smith ignores that the

ALJ cited other inaccurate statements Smith made to Dr. Dewees, including Smith's report that he stopped working because of his back pain,[3] his denial of any illegal drug use, and his denial of alcohol use since March 2010.[4] (R. 33). These other inconsistent statements made by Smith belie Smith's accusation of disingenuous hair splitting.

Moreover, the ALJ found Dr. Dewees's opinions were "inconsistent with the other reports from examining and treating practitioners, as well as the preponderance of objective, clinical findings." (R. 32). For example, the ALJ noted that Dr. Dewees's opinion that Smith can never balance was "less credible than Dr. Mitchell's assessment that [Smith] can frequently balance, as the record does not show the claimant to have complained of balance problems." (R. 33) (citations to the record omitted). The ALJ also correctly observed that "the clinical record contains absolutely no support for Dr. Dewees's assessment that the claimant can sit, stand, and walk for a combined total of only 2 hours per day," and that this opinion was contradicted by Smith's "own admission, not shared with Dr. Dewees, [that] he spends more time than that sitting with his father 4 days per week." (R. 33). Therefore, the court finds that substantial evidence supports the ALJ's reasonable decision not to credit Dr. Dewees's opinions.

---

[3] The ALJ noted that Smith "admitted to the Social Security Administration that he stopped working because he was laid off, and he represented that he was able to work when he applied for unemployment compensation." (R. 33) (citations to the record omitted).

[4] The ALJ observed Smith had reported to Dr. Nidhi Gupta Huff on April 9, 2010, that he drinks up to ten beers per day, and admitted using marijuana. (R. 33) (citations to the record omitted).

      C.      <u>The ALJ properly applied the pain standard in rejecting Smith's allegations of disabling pain.</u>

Finally, Smith contends that an MRI scan performed February 4, 2009, is "on its face sufficient evidence to support [Smith's] allegations of pain, and in light of the fact that neither the herniated disc nor the ventral hernia status post abdominal surgery had been treated at the time of the hearing, the evidence supported a pain level greater than at a mild to moderate level." Doc. 9 at 11. Although the ALJ did not explicitly find that Smith met the pain standard set out above, he articulated reasons consistent with its requirements as to why he did not fully credit Smith's testimony. For example, the ALJ found that Smith's allegations of disabling pain were "not fully credible to the extent alleged or corroborated by the objective, clinical findings on examination." (R. 32). In support of this finding, the ALJ noted that "Dr. Lievens found no paravertebral muscle spasms, no crepitus, effusion, deformities or clear trigger points," and "only observed 'mild' muscle tenderness in [Smith's] back, along with 5/5 motor strength in multiple regions." (R. 32); *see* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (ALJ will consider "conflicts between [a claimant's] statements and . . . the signs and laboratory findings" in assessing symptoms). As previously discussed, the ALJ also found Smith made inconsistent statements about why he left his job, and about his alcohol and drug use. (R. 33). These inconsistent statements were properly considered by the ALJ in assessing Smith's credibility. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (ALJ will consider

11

"conflicts between [a claimant's] statements and the rest of the evidence" in assessing symptoms).

In short, based on this record, the ALJ articulated specific reasons, which are supported by substantial evidence, for discounting Smith's testimony of disabling symptoms. Because this court does not reweigh the evidence, there is no reversible error in the ALJ's credibility finding.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Smith is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

DONE this 20th day of June, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE